HARLAND HIPPENSTEEL, JR. *v.* HERBERT J. KAROL.

[No. 3-373A26. Filed December 28, 1973.]

*Phyllis G. Poff,* of Auburn, *David Peebles,* of Fort Wayne, for appellant.

*Clifford E. Simon, Jr., Thomas M. Moorhead, Shoaff, Keegan, Baird and Simon,* of Fort Wayne, for appellee.

---

## I.

## STATEMENT ON THE APPEAL

STATON, J.—Dr. Karol sold Dr. Hippensteel unregistered securities in a Costa Rican sugar refining corporation. Five (5) Six Thousand Dollar ($6,000.00) units were sold. Each unit consisted of a share of stock and a debenture. Dr. Karol had made eight other sales to different purchasers totalling One Hundred Eight Thousand Dollars ($108,000.00). Dr. Hippensteel brought an action to recover the purchase price, interest and attorney's fees. Besides common law fraud, his complaint alleged violation of the fraudulent practices and registration provisions of the Indiana Security Law.[1] The trial court found against Dr. Hippensteel upon his allegations of fraud and further found that the unregistered security transaction was exempt under IC 23-2-1-2; Ind. Ann. Stat. § 25-855(b)(1) and (10) (Burns 1970). Dr. Hippensteel's motion to correct errors was denied by the trial court. Only one issue is considered by this Court on appeal:

> Was the sale of Ingenio La Gartia securities by Dr. Karol to Dr. Hippensteel exempt from the registration requirements of IC 23-2-1-3; Ind. Ann. Stat. § 25-856 (Burns 1970)?

Our opinion concludes that the trial court committed reversible error when it concluded that the unregistered securities transaction was exempt as a matter of law. We reverse.

## II.

## STATEMENT OF THE FACTS

Dr. Herbert Karol invested One Hundred Twenty Thousand Dollars ($120,000.00) in the Ingenio La Gartia sugar re-

---

1. See IC 23-2-1-12, Ind. Ann. Stat. § 25-866 (Burns 1970) which prohibits fraudulent practices with respect to the sale of securities in this State and IC 23-2-1-3; Ind. Ann. Stat. § 25-856 (Burns 1970) which states the general registration requirements concerning the offer or sale of any security within this State. Each of these provisions is incorporated in the civil penalties section of the Indiana Security Law by IC 23-2-1-19(a); Ind. Ann. Stat. § 25-873(a) (Burns 1970).

finery which was located in Costa Rica. This investment consisted of twenty (20) units of securities. Each unit was represented by a share of stock and a debenture having a total value of Six Thousand Dollars ($6,000.00). After flying his personal plane to Costa Rica for an annual stockholder's meeting in January, 1967, Dr. Karol decided to sell eighteen (18) of his original twenty (20) unit investment. During the months of February, March and April, 1967, he sold eighteen (18) units or One Hundred Eight Thousand Dollars ($108,000.00) worth of Ingenio La Gartia unregistered securities to eight (8) of his professional associates. After this sale, he came under great pressure from the management and shareholders of the Costa Rican corporation to reinvest. He purchased an additional eight (8) units of unregistered securities in May, 1967.

Dr. Hippensteel, a general medical practitioner, had known Dr. Karol professionally for approximately twenty (20) years and had referred patients to Dr. Karol, who was an urinary surgeon. Dr. Karol had spoken to Dr. Hippensteel about investing in Ingenio La Gartia in the early fall of 1966. Later telephone conversations were had concerning a possible investment by Dr. Hippensteel. Finally, in July, 1967 after a meeting in Dr. Hippensteel's home with the President of Ingenio La Gartia and Dr. Karol, Dr. Hippensteel purchased five units of unregistered securities. Dr. Karol sold his five unregistered units of securities to Dr. Hippensteel for an agreed price of Thirty Thousand Dollars ($30,000.00) When it became apparent to Dr. Hippensteel that Ingenio La Gartia might be in financial difficulty, he filed his complaint on April 10, 1969 alleging that the sale of Ingenio La Gartia securities was fraudulent at common law and violated the fraudulent practices provision of the Indiana Security Law. See IC 23-2-1-12, *supra*. Dr. Hippensteel additionally asserted in his complaint that the sale was in violation of the registration requirement set forth by IC 23-2-1-3, *supra,* making the sale voidable through the application of IC 23-2-1-19(a)(1) and

(2) ; Ind. Ann. Stat. § 25-873 (a) (1) and (2) (Burns 1970). After a two day trial, the trial court found that Dr. Hippensteel had failed in his burden of proof upon his allegations of fraud and that the security transaction was exempt from the registration requirements of IC 23-2-1-3, *supra.*

## III.
## STATEMENT OF THE ISSUE

The sole issue to be considered by this Court resulting from this appeal is:

Was the sale of Ingenio La Gartia securities by Dr. Karol to Dr. Hippensteel exempt from the registration requirements of IC 23-2-1-3, Ind. Ann. Stat. § 25-856 (Burns 1970) ?

A negative judgment was rendered by the trial court upon the fraud issues. *Columbia Realty* v. *Harrelson* (1973), 155 Ind. App. 604, 293 N.E.2d 804. Any contention that [1] a negative judgment is contrary to or not supported by the evidence presents no error for our review. *Engelbrecht* v. *Property Developers, Inc.* (1973), 156 Ind. App. 354, 296 N.E.2d 798; *Hiatt* v. *Yergin* (1972), 152 Ind. App. 497, 284 N.E.2d 834. Therefore, the fraud issues set forth in Dr. Hippensteel's motion to correct errors are not discussed in our "Statement on the Law."

## IV.
## STATEMENT ON THE LAW

The trial court determined that Dr. Karol's sale of five (5) unregistered units to Dr. Hippensteel was exempt from the registration requirements of IC 23-2-1-3, *supra.*[2] It concluded:

2. IC 23-2-1-3, Ind. Ann. Stat. § 25-856 (Burns 1970) provides:
"It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 102 [IC 23-2-1-2, Ind. Ann. Stat. § 25-855 (Burns 1970)]."
We note that although IC 23-2-1-3, *supra*, addresses itself solely to a criminal sanction, IC 23-2-1-19; Ind. Ann. Stat. § 25-873 (Burns 1970) provides an alternative civil penalty for the violation of the terms of that section. In his complaint, Dr. Hippensteel relied upon subsections (a) (1) and (2) of the foregoing provision.

"1. That the sale of Defendant's (Dr. Karol's) securities in Ingenio La Gartia to the plaintiff and others were exempt transactions under the Indiana Securities Law. *Burns Indiana Statutes Annotated, Section 25-855 (b) (1) and (10).*"

The burden of establishing any exemption under the registration requirements of IC 23-2-1-3, *supra,* is upon the party claiming the benefit of the exemption. See IC 23-2-1-16(j); Ind. Ann. Stat. § 25-870(j) (Burns 1970). The trial court's conclusion above presupposes a successful meeting of that burden by Dr. Karol. Our examination of the record reveals the contrary.

IC 1971, 23-2-1-2(b) (10), *supra,* provides an exemption from the registration requirements of IC 23-2-1-3, *supra,* for the offer or sale of securities in this State, if during any period of twelve (12) consecutive months, the offeror or seller has not directed offers to sell securities of the same class to more than twenty (20) persons, excluding otherwise exempt transactions. Dr. Karol complied with this portion of the exemption, but not the additional requirement of IC 23-2-1-2(b) (10) which requires that each buyer represent:

". . . in writing to the seller that he is purchasing such securities for investment, and (B) no commission or other remuneration is paid or given for or on account of a sale exempted under this subsection (10); but the commissioner may by rule or order, as to any security or transaction or any type of security or transaction, [withdraw or] further condition this exemption, or increase or decrease the number of offerees permitted, or waive the conditions in clauses (A) and (B) with or without the substitution of a limitation on remuneration; . . ."

Dr. Karol presented no evidence in the trial of this action that either the investment letters were obtained from the buyers of his Ingenio La Gartia securities or that a waiver of the condition had been obtained from the Securities Commissioner. Dr. Karol failed to carry the burden of evidence which would have entitled him to an exemption. The trial court's conclusion stated above is erroneous.

If the trial court's conclusion can be supported upon the application of any other exemption theory, this Court must affirm the trial court's judgment. *Indiana & Michigan Electric Co.* v. *Schnuck* (1973), 260 Ind. 632, 298 N.E.2d 436. Only subsection (1) of IC 23-2-1-2(b), *supra,* provides an alternative basis for an exemption. That subsection provides an exemption for "any isolated nonissuer transaction, whether effected through a broker-dealer or not; . . ." Can Dr. Karol's unregistered security transaction qualify as an "isolated nonissuer transaction?" A reassessment of the applicable facts can be obtained from Dr. Karol's direct examination:

"Q. . . . [Y]ou said you sold some of your own securities. Who did you sell them to?

"A. I sold them to — I can give you the exact names, if you like, from my records.

"Q. That would be fine.

"A. Do you want the exact ones?

"Q. Fine, if you have it. You're free to refer to any memoranda you have.

"A. Your question, if I understand correctly, is, 'Did I ever sell any of my securities?'

"Q. Yes.

"A. I sold two shares to Dr. Hillery.

"Q. Dr. Hillery?

"A. Yes.

"Q. And when was that, Doctor?

"A. That was between February — all these I'm giving you were between February and April of 1967.

"Q. And how much did you sell those to Dr. Hillery for?

"A. Two units.

"Q. And how much would that be?

"A. Six Thousand Dollars a unit — Twelve Thousand Dollars.

"Q. All right, sir.

"A. Dr. Lenhart, Dr. Ladig.

"Q. Now, can you tell us on — how do you spell Dr. Lenhart?

"A. L E N H A R T.

"Q. And how much did you sell to him?

"A. Three shares.

"Q. And how much would that have been for?

"A. Eighteen Thousand.

"Q. All right.

"A. Dr. Ladig, Dr. Braunlin.

"Q. How much for Dr. Ladig?

"A. Dr. Ladig, three shares, Eighteen Thousand Dollars.

"Q. All right.

"A. Dr. Braunlin, two shares, Twelve Thousand Dollars.

"Q. How do you spell Braunlin?

"A. B R A U N L I N.

"Q. And how many shares?

"A. Two shares, two units, Twelve Thousand Dollars.

"Q. All right.

"A. Dr. Gentile, two units, Twelve Thousand Dollars.

"Q. All right.

"A. Dr. Klooze, two units, Twelve Thousand Dollars.

"Q. All right.

"A. Dr. Stanley, two units, Twelve Thousand Dollars.

"Q. All right.

"A. Dr. Steigmeyer, two units, Twelve Thousand Dollars.

"Q. All right.

"A. And in July of 1967, I sold Dr. Hippensteel five units for Thirty Thousand Dollars. Those were the only sales I personally made.

"Q. Now, Doctor, then, as I add up when you sold to Dr.'s Hillery, Lenhart, Ladig, Braunlin, Gentile, Klooze, Stanley and Steigmeyer, that would amount to One Hundred Eight Thousand Dollars. That was in February, March and April of 1967, is that right?

"A. Correct, sir."

In summary, Dr. Karol sold eighteen (18) units or One Hundred Eight Thousand Dollars ($108,000.00) worth of unregistered securities to eight professional associates during February, March and April, 1967. Later, in July, 1967, he sold five units or Thirty Thousand Dollars ($30,000.00) worth of unregistered securities to Dr. Hippensteel. Within six

months, Dr. Karol made nine sales of twenty-three (23) units of unregistered securities for a sum of One Hundred Thirty Eight Thousand Dollars ($138,000.00).

Whether Dr. Karol's unregistered securities transactions can be considered an "isolated transaction" under the statute and thereby qualify as an exemption is a question of first impression in Indiana. The language used in IC 23-2-1-2(b) (1), *supra*, was taken verbatim from § 402(b) (1) of the Uniform Securities Act. See 7 Uniform Laws Annotated, Uniform Securities Act § 402(b) (1). The scope of the isolated transaction exemption depends upon the construction given the word isolated. Definitional indefiniteness is ". . . traditional and probably inevitable." See LOSS & COWETT, BLUE SKY LAWS 317-319 (1957) and the Official Comments to § 305(i) and (j), Uniform Securities Act, 7 Uniform Laws Annotated. Some form of an exemption for isolated transactions is nearly universal. See LOSS & COWETT, BLUE SKY LAWS 317, *supra*, and *Note*, 78 HARV. L. REV. 1635, 1646-1647 (1965). However, the form of the exemption varies. Twenty-seven (27) jurisdictions have enacted the Uniform Securities Act. Case law interpretation of the isolated transaction exemption can be found in only three of the twenty-seven jurisdictions.

In *Nelson* v. *State* (1960), Okla. Cr., 355 P. 2d 413, the Oklahoma Court of Criminal Appeals affirmed the conviction of Nelson who was charged with selling unregistered securities. In defining the term isolated sale, the court stated:

". . . An 'isolated sale' means one standing alone, disconnected from any other . . . Stated differently 'isolated sales' are those of a nonrecurring nature engaged in by persons not engaged in the security business. . . . The word isolated is not a word of art or technical meaning, but is a term the application of which must depend upon the facts of each case. . . ." *Nelson* v. *State* (1960), Okla.Cr., 355 P.2d at 420.

The definition accorded the isolated transaction exemption in *Nelson* v. *State, supra,* has since been relied upon by the

same Oklahoma Court and the Court of Appeals of Kentucky in similar criminal appeals. See *Sisson* v. *State* (1964), Okla. Cr., 404 P. 2d 55 and *Commonwealth* v. *Allen* (1969), Ky., 441 S.W.2d 424. In *Sisson* v. *Oklahoma, supra,* the court held that the sale of securities to more than ten (10) individuals did not qualify under the exemption. The Kentucky court reached a similar result in *Commonwealth* v. *Allen, supra,* where the appellant had admitted the sale or offer of sale of unregistered securities to at least thirty (30) people.

A third interpretation of an isolated transaction exemption more closely parallels the case at bar. In *Allen* v. *Schauf* (1969), 202 Kan. 348, 449 P.2d 1010, the Kansas Supreme Court sustained a defendant's assertion of an exempted transaction but this result turned upon the application of an administrative regulation defining an isolated transaction as one where the number of persons solicited in the state for any twelve (12) month period was less than four. See Reg. § 81-1-1 (Vol. 2, Kansas Administrative Rules and Regulations).[3]

Without the aid of such a definitive regulation, the approach taken by the Oklahoma Court of Criminal Appeals in *Nelson* v. *State, supra,* provides the best alternative.[4]

---

3. We note also that two jurisdictions who have not enacted the Uniform Securities Act have, like Kansas, anticipated the quandry presented to the courts in cases similar to the one before us and have promulgated administrative regulations defining the limits of an isolated transaction. Mississippi Regulation § 138(c) defines an isolated transaction as not more than 2 transactions of a similar character within any consecutive six month period. A ruling by the Division of Securities for the State of Tennessee limited the exemption to no more than ten repeated and successive transactions. See Miller, *Procedures under the Tennessee Securities Law,* 28 TENN. L. REV. 303, 308 (1961).

4. The isolated transaction exemption to the registration requirement of state securities law takes numerous forms other than that found in § 402(b)(1) of the Uniform Securities Act. See *Note,* 78 HARV. L. REV. 1635 (1965). The Minnesota provision is representative of those in many of the jurisdictions not adopting the Uniform Securities Act and of the exemptions previously contained in the law of many states adopting the Act. The Minnesota provision exempts any isolated sales by the issuer or owner of securities ". . . not being made in the course of repeated and successive sales of securities of the same issue. . . ." See MINN. ANN. STAT. § 80.06(2)(a) (1973 Supp.). In the context of this form of an isolated transaction exemption, the case of *Kneeland* v. *Emerton* (1932), 280 Mass. 371, 183 N.E. 155, has most

A case by case decisional approach is to be preferred. Dr. Karol's nine (9) sales of unregistered securities totalling One Hundred Thirty Eight Thousand Dollars ($138,000.00) over a six month period can hardly be considered an isolated transaction. The trial court's judgment · which concluded that Dr. Karol's security transactions were exempt is erroneous as a matter of law and must be reversed.

## V.
## DECISION OF THE COURT

Dr. Karol had the burden of proof to establish an exemption from the registration requirements of IC 23-2-1-3, *supra*. Our examination of the record does not support the trial court's conclusion of law that his transaction with Dr. Hippensteel was exempted under *"Burns Indiana Statutes Annotated, Section 25-855(b)(1) and (10)."* There is no evidence in the record of investment letters from the buyers or waivers from the Securities Commissioner. The only other possible exemption would be an "isolated nonissuer transaction whether effected through a broker-dealer or not; . . ." under subsection (1) of IC 23-2-1-2(b), *supra*. There is no administrative regulation defining an "isolated nonissuer transaction" in Indiana. This is a question of first impression in Indiana. Each case must be decided upon its own set of facts. Nine separate unregistered security transactions over a six month period involving twenty-three (23) units of Ingenio La Gartia securities having a value of One Hundred Thirty-Eight Thousand Dollars ($138,000.00) is not an "isolated nonissuer transaction." Without an administrative regulation, only strict compliance with the statutory requirements will effect an exemption.

---

often been relied upon where the scope and meaning of such an exemption has been at issue. See also, 1 A.L.R.3d 614. However, the variance between the language of exemptions such as Minnesota and the isolated transaction exemption as phrased in the Uniform Securities Act necessitates that we look to and rely upon the interpretations of such an exemption under statutes similar to that in the Uniform Act as adopted by Indiana.

Therefore, the judgment of the trial court should be and the same hereby is reversed with instructions to enter judgment for the Appellant, Dr. Hippensteel, consistent with this opinion.

Hoffman, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 304 N.E.2d 796.