Emanuel KAHN and Ideas Unlimited, Inc., Appellants (Defendants Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 4–1183 A 372.

Court of Appeals of Indiana, Fourth District.

May 29, 1986.

Rehearing Denied June 25, 1986.

James H. Voyles, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen. of Indiana, Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

Emanuel Kahn was convicted of securities fraud, corrupt business influence, 15

counts of sale of unregistered securities and 15 counts of sale of securities by an unregistered agent. Ideas Unlimited, a corporation created by Kahn, was also convicted of corrupt business influence. Kahn and Ideas Unlimited appeal, alleging the trial court erred by:

1) overruling defendants' motion to dismiss;

2) ordering the Indiana Department of Revenue to disclose tax records of Ideas Unlimited;

3) refusing defendants' motions for change of venue;

4) allowing the state to amend the information by adding a count of securities fraud against Kahn;

5) overruling defendants' motion to quash the search warrant and to suppress evidence;

6) overruling defendant Kahn's motion in limine;

7) overruling defendants' request for additional voir dire challenges;

8) giving certain final instructions;

9) basing a verdict of guilty on evidence that was insufficient to prove guilt beyond a reasonable doubt; and

10) imposing an excessive sentence.

We affirm.

The record reveals that in June of 1979, Kahn formed Ideas Unlimited, Incorporated, to produce and market various novelty items. He also formed Unlimited Marketing and Unlimited Promotions, which companies were registered with the Secretary of State of Indiana as assumed business names of Ideas Unlimited. Kahn capitalized these enterprises by selling shares of stock in Ideas Unlimited, Unlimited Marketing, and Unlimited Promotions to more than 35 people, but he failed to register these stocks or himself as an agent as

required by law. Kahn also failed to disclose information to his investors concerning administrative and judicial proceedings against him for securities violations in Illinois.

From the period of June 1979 through June 1982, stockholders invested $1,465,200 in Ideas Unlimited, Inc., yet total gross sales of its products amounted to a mere $2,429. Nevertheless, Kahn paid himself $489,545 for his services during that same period of time. In February 1982, the County Prosecutor's office began to investigate Ideas Unlimited after receiving several complaints from investors. On June 18, 1982, Kahn was taken into custody. Following a jury trial, Kahn and Ideas Unlimited were found guilty as charged.

▇▇▇ Kahn and Ideas Unlimited first claim the trial court erred in overruling their motions to dismiss the charges against them. The motions alleged the informations filed against them failed to state the offenses with sufficient certainty, the facts stated did not constitute an offense, and venue was improper in Marion County.[1]

▇▇ Appellants's claim of improper venue is without merit. At the time of the instant offenses, IND.CODE 35–1.1–2–1(d) (Supp.1981), recodified at IC 35–32–2–1 (1982), provided:

If the commission of an offense is commenced in one county and is consummated in another county, trial may be had in either of the counties.

Although sales of Ideas Unlimited securities were made in various counties throughout Indiana, venue was proper in Marion County. Both Ideas Unlimited and Kahn committed the crime of corrupt business

---

1. Kahn also claims the informations charging violations of the securities code were defective as the counts were duplicitous and the offenses were misjoined. Two or more offenses may be joined in the same information in separate counts when they are based on a series of acts constituting a single scheme or plan. *See* IND. CODE 35–3.1–1–9; *see also Worsley v. State* (1974), 162 Ind.App. 34, 317 N.E.2d 908. As to

the argument of duplicitous counts, Kahn fails to specify in what way the counts are duplicitous. When a single transaction or occurrence constitutes more than one offense, it is not improper or multiplicious to charge more than one offense. *Owen v. State* (1978), 269 Ind. 513, 381 N.E.2d 1235. We find no error in the trial court's refusal to dismiss on these bases.

influence[2] in Marion County. Ideas Unlimited was charged with receiving proceeds to operate an enterprise, under subsection (a)(1) of the statute; Kahn was charged with associating with an enterprise and participating in its activities through a pattern of racketeering, under subsection (a)(3). Ideas Unlimited received proceeds from the unlawful security transactions and operated its business from its corporate offices in Marion County. Kahn maintained offices and conducted business at the corporate offices of Ideas Unlimited. The enterprise, Ideas Unlimited, was located in Marion County. Thus, he committed the crime of corrupt business influence in Marion County. Kahn was also charged with securities fraud, selling unregistered securities, and selling securities without a securities license. The stock certificates were mailed to investors from the corporate offices in Marion County and money was received there. Fraudulent representations were made to investors through newsletters sent from the offices of Ideas Unlimited. Furthermore, if the crime charged is an omission to act, venue of the offense is the county where the act should have been performed. *Gilmour v. State* (1952), 230 Ind. 454, 104 N.E.2d 127. Kahn should have registered the securities and himself with the office of the Secretary of State located in Marion County. The failure to register occurred in Marion County; venue was properly brought there.

Appellants also claim the information charging them with the crime of corrupt business influence failed to allege with sufficient certainty the crimes which constituted a "pattern of racketeering activity". The information merely alleged Kahn committed "at least two violations of IC 23–2–

1–1 through 23–2–1–25 by the sale of unregistered securities and the sale of securities while not being registered as an agent or broker-dealer." Similarly, the information charging the corporation alleged: "at least two violations of IC 23–2–1–1 through IC 23–2–1–25 by the sale of unregistered securities." Appellants claim these informations are defective since they failed to specify the date and nature of each alleged securities violation.

Pursuant to IC 35–34–1–2 the state must set forth in the information the nature and elements of the offense charged in plain and concise language and state the date of the offense with sufficient particularity to show the offense was committed within the period of limitations applicable to that offense. Moreover, an information must be sufficiently specific to apprise the defendant of the crime with which he is charged and to enable him to prepare a defense. *Jones v. State* (1984), Ind.App., 467 N.E.2d 1236.

In this case, the informations charging appellants with the crime of corrupt business influence listed the inclusive dates of the charged crimes and were filed contemporaneously with the informations alleging the underlying securities crimes which informations set forth specific dates and names of the buyers involved in each transaction. Read in conjunction, the informations sufficiently apprised appellants of the crimes charged so that they might prepare a defense. To require the state to repeat each underlying securities count on the corrupt business influence information would be redundant and unnecessary.

---

**2.** The crime of corrupt business influence is defined by IC 35–45–6–2 as follows:

 (a) A person:
 (1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in real property or to establish or to operate an enterprise;
 (2) who through a pattern of racketeering activity, knowingly or intentionally acquires or

maintains, either directly or indirectly, an interest in or control of real property or an enterprise; or
 (3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;
 commits corrupt business influence, a Class C felony.

Finally, appellants claim the informations were defective in that they failed to include the specific dates of each securities violation but merely alleged violations of the securities code "on or about the 3rd day of July, 1979, to on or about the 17th day of June, 1982." Once again, the state was not required to repeat every count listed in the accompanying informations in order to properly allege the crime of corrupt business influence.

As appellants correctly note, the dates of the alleged crimes are vital in a charge of corrupt business influence due to the structure of the statute. The statute prohibits engaging in a "pattern of racketeering activity," defined thusly:

'Pattern of racketeering activity' means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents; however, the incidents are a pattern of racketeering activity *only if at least one (1) of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five (5) years after a prior incident of racketeering activity.*

(emphasis added) IC 35–45–6–1. An essential element of the crime of corrupt business influence is the commission of any two enumerated crimes[3] within a five year period and that one of the two must have been committed after August 31, 1980.

In this instance, the information alleged securities crimes occurring from July 3, 1979, to June 17, 1982, well within the five year span required by statute. Of the 15 counts of sale of unregistered securities and 15 counts of sale by an unregistered agent, only four counts occurred after August 31, 1980. As Kahn was convicted of all thirty counts, including four that occurred after August 31, 1980, the time re-

quirement that at least one crime be committed after August 31, 1980 was fulfilled.

Appellants next challenge the trial court's order requiring the Indiana Department of Revenue to disclose all tax records of Ideas Unlimited. The state seized several documents during their search of the corporation's office, including a registered retail merchants certificate from the Indiana Department of State Revenue, which authorized Ideas Unlimited to collect Indiana retail sales tax. The state petitioned the court to require the Indiana Department of Revenue to disclose all Indiana tax records of the corporation. The trial court granted the petition and ordered production of the requested records.

IND.CODE 6–8.1–7–1(a) allows the Department of Revenue to produce tax records pursuant to a judicial order. In this case, the information sought was relevant and material to show the true financial condition of the corporation, as it was charged with a crime. There was no error in the court's allowance of the petition.

Appellants then argue the trial court erred in refusing to grant a change of venue under Trial Rule 12. They claimed that a fair and impartial trial could not be held in Marion County due to the publicity, excitement and prejudice against them. In *Underhill v. State* (1981), Ind., 428 N.E.2d 759, 763, our supreme court stated:

The grant or denial of a motion for a change of venue is governed by Ind.Code 35–1–25–1 *et seq.* (Burns 1979 Repl.), Ind. R.Crim.P. 12, and the constitutional right to trial before an impartial jury. Ind. Const. Art. 1, 13; U.S. Const. Amend. 14. The question whether a change of venue is warranted lies within the sound discretion of the trial court; the burden rests with the movant to establish either the high probability or existence of such widespread bias in the community that an impartial jury cannot be obtained.

---

3. IC 35–45–6–1 provides in pertinent part: "Racketeering activity" means to commit, to attempt to commit, or to conspire to commit a violation, or aiding and abetting in a viola-tion, of a provision of IC 23–2–1, or of a rule or order issued under IC 23–2–1.
IC 23–2–1 is the securities code.

Here appellants made no showing of juror prejudice. Indeed, the record is totally absent of any indication of pretrial publicity or any type of prejudice. The trial court did not err in denying a change of venue.

Next Kahn claims the trial court erred in allowing the state to amend the information to add a charge of securities fraud against him. An information may be amended at anytime before, during or after trial so long as it does not prejudice the substantial rights of the accused. IC 35-34-1-5(a); *Williams v. State* (1982), Ind., 430 N.E.2d 759.

■ On April 4, 1983, the prosecutor dropped counts 45 through 74 and filed a new information charging securities fraud under IC 23-2-1-12. Trial was then set for May 23, 1983. The state reduced the number of charges against Kahn in order to decrease the time necessary for trial of the case. Appellants have failed to show how they were prejudiced by this action. We perceive no error.

Appellants next allege the trial court erred in overruling their motion to quash the search warrant and to suppress evidence. They argue the affidavit of probable cause and resulting search warrant were not based upon sufficient probable cause.

An affidavit for a search warrant must apprise a magistrate of the underlying facts and circumstances which tend to show probable cause exists for a search. *Layman v. State* (1980), Ind.App., 407 N.E.2d 259. Moreover, inferences may be drawn by the magistrate from the facts stated. *McClain v. State* (1980), 274 Ind. 250, 410 N.E.2d 1297. In *Layman,* our supreme court outlined the approach of a reviewing court faced with the sufficiency of the factual basis presented for the issuance of a search warrant as follows:

> There are two basic questions pertinent to the determination of probable cause for a search under any set of facts: (1) whether the particular items sought to be seized are sufficiently connected with criminal activity and (2) whether the items are to be found in a particular

place. If sufficient facts are presented so that a neutral and detached magistrate can make an affirmative response to these questions, probable cause may be presumed to exist thus making the issuance of the search warrant reasonable. (citations omitted)

In addition, the United States Supreme Court recently, in *Illinois v. Gates* (1983), 462 U.S. 213, 237, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, discussed probable cause as follows:

> ... we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations. *See Jones v. United States,* [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)], *supra; United States v. Ventresca* [380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)] *supra; Brinegar v. United States* [338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)], *supra.* The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclude[ing]' that probable cause existed. *Jones v. United States, supra,* 362 U.S., at 271, 80 S.Ct., at 736. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* [*v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1969)] and *Spinelli* [*v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)]. (Footnotes omitted.)

■ In the present case, the state offered the affidavit of Officer Phillip Gerdt and requested authority to search for evidence of the instant offenses in the offices

of Ideas Unlimited, Inc. Officer Gerdt and Alan Bucksot, an investigator employed by the Office of the Prosecutor of Marion County, conducted interviews with employees and shareholders of Ideas Unlimited, Inc. and discovered that Kahn, as well as other agents, sold stock issued by Ideas Unlimited, Inc. in the names of Ideas Unlimited, Inc., Unlimited Marketing, and Unlimited Promotions. Moreover, additional evidence in the affidavit substantiated information offered by employees and shareholders of Ideas Unlimited, Inc. Records from the Office of the Secretary of State of Indiana indicated that neither the agents nor securities issued by Ideas Unlimited, Inc. were registered and that Unlimited Marketing and Unlimited Promotions were merely assumed business names of Ideas Unlimited, Inc. Also, Officer Gerdt was informed by confidential informants who frequented the offices of Ideas Unlimited, Inc., that the records he sought were maintained at offices located at 921 East 86th Street, Indianapolis, Indiana. The informants had previously provided Officer Gerdt with names of employees of Ideas Unlimited, Inc. and a description of the physical lay-out of the offices. This information was independently corroborated by Officer Gerdt and Mr. Bucksot and sufficiency established probable cause to search the corporate offices. The trial court did not err in refusing to invalidate the search warrant and suppress the evidence gained thereby.

■ Kahn then claims the trial court erred in overruling his motion *in limine* regarding evidence of proceedings brought against him for deceptive practices relating to security violations in Illinois. A denial of a motion *in limine* does not amount to error by the court since it is not a final determination that causes prejudice to the defendant. Error, if any, occurs when the

challeged evidence is improperly admitted and objection is made at trial. *Harris v. State* (1985), Ind., 480 N.E.2d 932. Since appellant did object to the evidence at trial, we will treat his argument as one alleging the admission of such evidence was error.

■ The evidence of Kahn's Illinois security law violations was used to establish the "omission of a material fact" to support the charge of securities fraud under IC 23–2–1–12(2).[4] The Indiana Blue Sky Law (IC 23–2–1–1 through –24) mandates that such matters as prior injunctions and convictions are material facts that should be disclosed to potential investors. The trial court did not err in admitting this evidence.

■ Appellants also claim the court erred in overruling their request for additional *voir dire* challenges. Appellants reason that because the action involved three causes of action and two defendants, additional *voir dire* challenges should have been allowed. Once again, appellant's argument is meritless. A defendant in a non-capital felony case is entitled to ten preemptory challenges and co-defendants must join in their challenges. IC 35–1–30–2; *Morris v. State* (1977), 266 Ind. 473, 364 N.E.2d 132, *cert. denied*, 434 U.S. 972, 98 S.Ct. 526, 54 L.Ed.2d 462.

■ Appellants then allege the trial court erred in giving certain instructions relating to the corrupt business influence charges. They argue that Ideas Unlimited did not comprise an "enterprise," an essential element of the crime of corrupt business influence.

The version of IC 35–45–6–1(b) (1981 Supp.) in effect at the time of the offense defined "enterprise" as a:

(1) sole proprietorship, partnership, business trust, or governmental entity; or

---

**4.** IC 23–2–1–12 provides:

It is unlawful for any person in connection with the offer, sale or purchase of any security, either directly or indirectly, (1) to employ any device, scheme or artifice to defraud, or (2) to make any untrue statements of a material fact or *to omit to state a material fact*

necessary in order to make the statements made in the light of circumstances under which they are made, not misleading, or (3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.
(emphasis added.)

(2) union, association, or group, whether a legal entity or merely associated in fact.

The statute did not specifically include the term "corporation" in its definition of enterprise, although it was added by amendment in 1984. The term "group" is broad enough to encompass a corporation, however, Webster's Third New International Dictionary (1976) includes the following definition of group: "a number of individuals bound together by a community of interest, purpose, or function." Certainly this definition would apply to a corporation. Furthermore, the subsequent amendment of a statute is indicative of the Legislature's intent at the original enactment of that statute. *United States Fidelity & Guaranty v. Defluiter* (1983), Ind.App., 456 N.E.2d 429, 432. We perceive the Legislature's original intent in defining "enterprise" was to include every sort of group or association within that definition. The trial court did not err in finding that the evidence justified an instruction on the definition of the term "enterprise".

Appellants then claim error in the giving of the following final instructions:

## FINAL INSTRUCTION NUMBER 16

The burden of proof to show exemption from registration is upon defendant.

## FINAL INSTRUCTION NUMBER 20

Proof of evil motive or intent to violate the law, or knowledge that the law was being violated, is not required. Furthermore, as to the alleged sale of securities by an unregistered agent, *it is not necessary that the State prove that the defendant knew* that the security or agent should have been registered, that the security or agent was not registered, or that the sale of an unregistered security or sale by unregistered agent is forbidden by law. (emphasis added.)

## FINAL INSTRUCTION NUMBER 21

Evidence of other offenses or acts allegedly similar to that charged is relevant and admissible to show a common scheme or plan or to show particular criminal intent and knowledge on the part of the accused, but not to prove the offense charged. You are not to consider it except for the purpose of showing guilty knowledge and intent.

## FINAL INSTRUCTION NUMBER 22

Good faith or advice of counsel are not a defense to a securities law offense.

 Instructions Number 16 and 21 are correct statements of the law, *see* IC 23–2–1–16(j); *Hippensteel v. Karol* (1973), 159 Ind.App. 146, 304 N.E.2d 796; *Van Deveer v. State* (1971), 256 Ind. 509, 269 N.E.2d 865, as is Instruction Number 22. *See e.g. People v. Blair* (1978), 195 Col. 462, 579 P.2d 1133. Moreover, the evidence supported the giving of these instructions.

We have serious reservations concerning Instruction Number 20, which states that a person may be found criminally liable for selling unregistered securities and for failing to register as an agent even if he was unaware he was breaking the law. Both crimes are C felonies. The crime of failing to register as an agent is defined by IC 23–2–1–8 as follows:

(a) It is unlawful for any person to transact business in this state as a broker-dealer, agent or investment advisor unless he is registered under this chapter.

Selling an unregistered security is prohibited by IC 23–2–1–3 which provides:

It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 102.

The element of intent in a securities offense is included in the last section of the chapter, IC 23–2–1–18.1, which states:

A person who knowingly violates this chapter commits a Class C felony.

The phrase "knowingly violates" suggests that a person must know or at least be aware of a high probability that he is doing a wrongful act, although he may not be

aware of the specific law he is violating. See *United States v. Peltz,* 433 F.2d 48, 55 (2d Cir.1970), *cert. denied,* 401 U.S. 955, 91 S.Ct. 974, 28 L.Ed.2d 238. Such an interpretation would allow fines, injunctions and other sanctions by the Indiana Securities Commission against inadvertent violators, but confine felony convictions and imprisonment to those who knowingly violate the securities laws.

■ Our supreme court has refused to recognize such a distinction, however. In *Clarkson v. State* (1985), Ind., 486 N.E.2d 501, 507, Justice Pivarnik wrote:

> Transacting business, pursuant to Instruction No. 8, offering or selling pursuant to Instruction No. 12, and committing one of the acts constituting fraud as enumerated in Instruction No. 14, are acts by their inherent nature cannot be done unknowingly. Accordingly, if the jury found Appellant committed these acts, they necessarily found he committed them knowingly. It follows that it was not fundamental error for the trial court to have failed to specifically instruct the jury that Appellant had to commit these acts knowingly. Further, whether Appellant was aware of the Indiana securities laws is of no moment for this is a situation where criminal intent is presumed from the acts of the defendant.[5]

(citations omitted.) Since our supreme court has held that criminal intent is not an element of a securities offense, we may find no error in the trial court's instruction to that effect.

Kahn next contends the evidence of corrupt business influence, securities fraud, selling unregistered securities, and failing to register as an agent was insufficient to prove guilt beyond a reasonable doubt.

■ Kahn admitted he sold securities and that these securities were not reg-

istered. He also admitted he did not register as an agent with the Secretary of State. IND. CODE 23–2–1–16(j) provides that the burden of proving exemption from registration rests with the party claiming the benefit of the exemption. Furthermore, the evidence was undisputed that Kahn sold shares of Ideas Unlimited to more than 35 investors, which would require registration of both the stock and the selling agent. The evidence sufficiently established the securities offenses.

■ Kahn's conviction of corrupt business influence was also supported by sufficient evidence. The state proved that Kahn associated with an enterprise, Ideas Unlimited, whose activities were conducted through a pattern of racketeering activity, defined as the commission of two violations of the securities code. *See* IC 35–45–6–2.

■ The offense of securities fraud requires the state to prove Kahn made an untrue statement of material fact or omitted to state a material fact in connection with the offer, sale or purchase of a security. IC 23–2–1–12. The evidence indicated that Kahn omitted a material fact when he failed to inform potential investors of his previous violations of the Illinois securities code. This evidence was sufficient to establish the commission of securities fraud.

Finally, Kahn contends the trial court imposed an excessive sentence and failed to consider mitigating circumstances.

The trial court found:

> [t]here are no mitigating factors and aggravating factors are as follows: 1. The defendant has a history of criminal activity. 2. The defendant is in need of rehabilitative treatment that can only be provided by a pendl [sic] institution. 3. A reduced sentence would depreciate the seriousness of the crime. It is therefore adjudged and decreed that the defendant, Emanual Kahn, age 46 be sentenced as

---

**5.** The federal cases cited by the court in *Clarkson* interpreted the federal securities code which criminalizes willful violations, but prohibits imprisonment if the accused proves he had no knowledge of such rule or regulation. § 32(a) Securities Exchange Act. Many states provide a similar defense. *See, e.g., State v. Russell* (1972), 119 N.J.Super. 344, 291 A.2d 583. Indiana's statute formerly contained such a defense, but in 1978 was amended to criminalize all knowing violations of the securities laws.

follows: (Group A), counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16 and 17 Sale of unregistered securities, Class C Felony —5 years on each count to run concurrent. (Group B) counts 23, 24, 25, 26, 27, 28, 29, 30, 31, 34, 35, 36, 37, 38 and 39. Sale of unregistered securities by unregistered agent, Class C Felony, 5 years on each count to run concurrent. Count 75, corrupt Business influence, Class C Felony, 5 years to run concurrent to all counts. The five years received in Group A, Sale of unregistered securities are to run *consecutive* to the five years received in Group B, Sale of unregistered securities by unregistered agent, and *consecutive* to time received (5 years) in cause CR83-77E, Securities fraud, Class C Felony. *Total time to be executed on this cause is 10 years.*

(emphasis added.)

■ The Court sentenced Kahn to a ten-year prison term, but also stated that the three five-year sentences imposed for the securities offenses were to run consecutively, which would comprise a sentence of fifteen years. Thus, this cause must be returned to the trial court for correction of the sentence to reflect its apparent intention to impose a ten-year sentence.

■ Assuming the trial court intended to impose a sentence of ten years, we do not find such a sentence to be inappropriate on the facts of this case. When a trial court imposes consecutive terms of imprisonment the record should disclose what factors were considered by the court to be mitigating or aggravating factors. *Taylor v. State* (1982), Ind., 442 N.E.2d 1087; IND.CODE 35-50-1-2(a); IND. CODE 35-38-1-7. In addition, a court on review will not alter a sentence imposed by a trial judge if it is within statutory bounds unless it appears that the sentence is manifestly unreasonable. *Bryan v. State* (1982), Ind., 438 N.E.2d 709. Here the trial court listed three aggravating circumstances, including Kahn's history of criminal activity. The record indicated that Kahn had been cited for securities violations in Illinois in 1972 and had been found in contempt of court

for continuing to unlawfully sell securities in 1975. A sentence of ten years is not manifestly unreasonable on the facts of this case.

Accordingly, we affirm the trial court's judgment, but remand for a correction of Kahn's sentence.

MILLER and CONOVER, JJ., concur.