**MONARCH BEVERAGE CO., INC., Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–9101–TA–00003.

Tax Court of Indiana.

April 7, 1992.

Phillip A. Terry, Brian K. Peters, McHale, Cook & Welch, P.C., Indianapolis, for petitioner.

Linley E. Pearson, Atty. Gen., Ted J. Holaday, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Monarch Beverage Co., Inc. (Monarch) appeals the Indiana Department of State Revenue's (Department) denial of its claim for refund of use tax paid[1] in conjunction with licensing, registering, and titling sixteen (16) trailers it did not purchase, but used and leased. Monarch asks the court to reverse the Department's determination, to enter a judgment in its favor, and to order a refund in the amount of $21,728.69 plus all proper interest.

---

1. The parties refer to the tax paid by Monarch inconsistently, sometimes as use tax and other times as sales tax.

## FACTS

Monarch is an Indiana corporation with its principal place of business in Indianapolis. Monarch uses trailers in its business of distributing wholesale alcoholic beverages. Monarch and Hackney & Sons (Hackney), a trailer manufacturer, agreed that Hackney would manufacture sixteen trailers for Monarch's use in its distribution business, although Monarch would not purchase the trailers. Instead, the understanding was that Monarch would find a third party to purchase the trailers from Hackney and then lease them to Monarch.

In late January 1990, Hackney delivered the sixteen completed trailers to Monarch along with certificates of origin and invoices for each. The certificates of origin listed each trailer as the property of Monarch. The invoices indicated the trailers were sold to Monarch, stating: "PLEASE PAY FROM INVOICE," "NO STATEMENT WILL BE SENT," and the terms, "NET 15 DAYS." In conformance with its understanding with Hackney, however, Monarch did not pay Hackney for the trailers either upon accepting delivery or thereafter.

On January 31, 1990, Monarch paid use tax in the amount of $21,728.69 to the Indiana Bureau of Motor Vehicles (the BMV) to get license plates and titles for the trailers. When issued, the certificates of title identified Monarch as the owner, but the space for the owner's social security number was blank.

Forty-six days later, on March 19, 1990, Monarch and the Gelco Corporation (Gelco) executed a lease agreement, whereby Gelco would purchase the trailers from Hackney and lease them to Monarch. In addition, Monarch pays the sales tax due on the trailers under the lease terms. Gelco paid Hackney the purchase price, and Monarch, as seller, assigned the certificates of title to Gelco, as purchaser. The certificates, however, did not indicate a selling price.

On August 3, 1990, Monarch filed a claim for refund with the Department for the full amount of tax it paid to obtain the licenses, registrations, and titles, contending it paid

the same tax twice, once to the BMV and again as required under its lease. On October 24, 1990, the Department denied Monarch's claim for refund, stating Monarch acquired the trailers from the manufacturer in a taxable retail transaction.

Additional facts will be included as necessary.

## ISSUES

1. Did Monarch acquire the trailers from the manufacturer in an isolated and occasional transaction subject to use tax under IND.CODE 6–2.5–3–2(b)?
2. Did Monarch acquire the trailers from the manufacturer in a retail transaction subject to sales tax pursuant to IND.CODE 6–2.5–2–1(a) and use tax pursuant to IC 6–2.5–3–2(a)?
3. Is Monarch entitled to a refund of use tax paid to the BMV on the trailers because it is unfair that Monarch must pay the same tax again on the trailers under its lease agreement?

## DISCUSSION AND DECISION

### 1.

The State Gross Retail and Use Tax Act (the Act), IND.CODE 6–2.5–1–1 *et seq.*, imposes excise tax on sales transactions involving buyers and sellers. The Act does not impose tax on all sales, but generally imposes tax only on those sales that are "retail transactions."[2] Exclusively for purposes of the use tax, however, the acquisition of a vehicle is subject to tax even if it is not acquired in a retail transaction:

(b) The use tax is also imposed on the storage, use, or consumption of a vehicle, an aircraft, or a watercraft, if the vehicle, aircraft, or watercraft:

(1) is acquired in a transaction that is an isolated or occasional sale; *and*

(2) is required to be titled, licensed, or registered by this state for use in Indiana.

IC 6–2.5–3–2(b) (emphasis added). Although a transaction that meets the above

2. *See* IC 6–2.5–2–1(a) and IC 6–2.5–3–2(a).

requirements is not a "retail transaction," IND.CODE 6–2.5–3–3 deems it to be a "retail transaction" within the meaning of IND.CODE 6–2.5–1–2.

■ The Department contends Monarch's transaction with Hackney is subject to use tax pursuant to IC 6–2.5–3–2(b). The court first must determine whether Monarch acquired the trailers in a transaction that was an isolated or occasional sale. IC 6–2.5–3–2(b)(1). The Indiana Court of Appeals found persuasive a definition of the term "isolated sale" as a sale that stands alone, disconnected from any other. *Hippensteel v. Karol* (1973), 159 Ind.App. 146, 153, 304 N.E.2d 796, 800 (construing the term "isolated transaction" as used in the Indiana Securities Act, IND.CODE 23–2–1–2). The State Gross Retail and Use Tax Act, however, only distinguishes, without defining, an isolated or occasional sale [3] from a sale in the ordinary course of a regularly conducted trade or business.[4] Nonetheless, juxtaposition of these concepts in the Act suggests their opposition, an isolated sale representing a non-retail transaction and a sale in the ordinary course of business representing a retail transaction. Accordingly, IC 6–2.5–3–2(b) imposes use tax on transactions in which individuals, not normally in the business of selling vehicles, sell their car, truck, or other vehicle.[5]

■ Hackney is in the business of manufacturing and selling trailers.[6] Hackney transferred the trailers to Monarch in the ordinary course of its regularly conducted business, not in a non-recurring transaction that stands isolated and alone. The re-

quirement under IC 6–2.5–3–2(b)(1) therefore is not met,[7] and Monarch's transaction is not the type of transaction the Legislature intended IC 6–2.5–3–2(b) to tax. The court therefore finds IC 6–2.5–3–2(b) does not impose use tax on Monarch's acquisition of the trailers from Hackney.

2.

The Department further asserts the transaction between Monarch and Hackney is subject to sales and use tax because Monarch acquired the trailers in a retail transaction. The Act imposes sales tax "on *retail transactions* made in Indiana," IC 6–2.5–2–1(a) (emphasis added), and use tax "on the storage, use, or consumption of tangible personal property in Indiana if the property was acquired in a *retail transaction....*"[8] IC 6–2.5–3–2(a) (emphasis added). The transaction between Monarch and Hackney therefore is subject to tax if it was a retail transaction.

A " '[r]etail transaction' means a transaction of a retail merchant that constitutes *selling at retail* as described in IC 6–2.5–4–1...." IC 6–2.5–1–2(a) (emphasis added). The activities of the seller/transferor are scrutinized under IC 6–2.5–1–2(a) to determine whether a transaction is a retail transaction. Accordingly, Monarch's acquisition of the trailers is a taxable retail transaction only if Hackney, the seller/transferor, is a retail merchant making retail transactions because its activities constitute "selling at retail." *See Cowden & Sons Trucking, Inc. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 575 N.E.2d 718, 720–21.

---

3. *See* IC 6–2.5–3–2(b)(1).

4. *See* IND.CODE 6–2.5–4–1.

5. Use tax imposed under IC 6–2.5–3–2(b) on the acquisition of a vehicle in an isolated sale, which is not a retail transaction, must be paid to the licensing agency, the BMV, at the time the vehicle is licensed. IND.CODE 6–2.5–3–6(c).

6. The words "isolated or occasional *sale*" emphasize the activities of the seller/transferor. The statute could have emphasized the buyer/acquirer's activities, however, if it used the words "isolated or occasional *purchase*."

7. The trailers were, however, "required to be titled, licensed, or registered by this state for use in Indiana," pursuant to IND.CODE 9–1–4–1 (as amended 1977) and IND.CODE 9–1–2–1 (as amended 1977), satisfying the requirement under IC 6–2.5–3–2(b)(2).

8. The BMV does not have authority to collect sales or use tax imposed on a vehicle acquired in a retail transaction. *See generally* IC 6–2.5–2–1(b); IC 6–2.5–3–2(a); IC 6–2.5–3–6(b); *see also* Note 5, *supra.*, op. at 1211. Therefore, Monarch should have paid the tax imposed under IC 6–2.5–2–1(a) or IC 6–2.5–3–2(a) either to Hackney or to the Department, not to the BMV.

Hackney engages in "selling at retail" if it (1) acquires property for the *purpose of resale* and (2) transfers the property *for consideration* during the ordinary course of its regularly conducted trade or business. IC 6–2.5–4–1. Hackney acquired parts and materials for the *purpose of resale* as manufactured trailers,[9] satisfying the first requirement of "selling at retail."

Hackney's transfer of the trailers to Monarch also must be *for consideration* to constitute "selling at retail." The Act, however, does not expressly define the term "consideration," as used in IC 6–2.5–4–1(b)(2). The concept of consideration evolved from the law of contracts. In order to have a legally binding contract there must generally be an offer, acceptance, and consideration. *Bain v. Board of Trustees of Starke Memorial Hosp.* (1990), Ind. App., 550 N.E.2d 106, 110 (citing *Herald Telephone v. Fatouros* (1982), Ind.App., 431 N.E.2d 171, 174). Consideration is essential to every contract. *Alber v. Standard Heating and Air Conditioning, Inc.* (1985), Ind.App., 476 N.E.2d 507, 510 (citing *Puetz v. Cozmas* (1958), 237 Ind. 500, 147 N.E.2d 227).

■■■ Indiana has long held that consideration in the form of money is not essential to a binding contract. *Kelley, Glover & Vale, Inc. v. Heitman* (1942), 220 Ind. 625, 632, 44 N.E.2d 981, 984 (citing *Trackwell v. Irvin* (1917), 66 Ind.App. 5, 115 N.E. 807), *cert. denied,* (1943), 319 U.S. 762, 63 S.Ct. 1320, 87 L.Ed. 1713. A mere promise is sufficient as consideration if it is the result of a bargained for exchange. *Burdsall v. City of Elwood* (1983), Ind.App., 454 N.E.2d 434, 436 (citing *Urbanational Developers, Inc. v. Shamrock Eng'g, Inc.* (1978), 175 Ind.App. 416, 372 N.E.2d 742). Moreover, a benefit to the promisor or a detriment to the promisee is sufficient as consideration. *Tuthill Corp., Fill–Rite Div. v. Wolfe* (1983), Ind.App., 451 N.E.2d 72, 78 (citing *Urbanational Developers, Inc.,* 372 N.E.2d 742). "The doing of an act by one at the request of another which may

be a detrimental inconvenience, however slight, to the party doing it or may be a benefit, however slight, to the party at whose request it is performed, is legal consideration for a promise by such requesting party." *Harrison–Floyd Farm Bureau Coop. Ass'n v. Reed* (1989), Ind.App., 546 N.E.2d 855, 857 (citing *Herrera v. Collection Serv. Inc.* (1982), Ind.App., 441 N.E.2d 981).

■■■ The court may apply either of the above tests to determine whether sufficient consideration exists in the transaction between Monarch and Hackney. First, the essence of the transaction involved exchanged promises: Hackney promised to manufacture and deliver the sixteen trailers to Monarch in return for Monarch's promise to pay the price Hackney charged by finding a third party buyer. Monarch's promise to pay is not diluted by its intent to obligate a third party because Monarch was ultimately liable. *See McClure Oil Corp. v. Murray Equip., Inc.* (1987), Ind. App., 515 N.E.2d 546, 552; IND.CODE 26–1–2–607(1), (2); IND.CODE 26–1–2–709(1); *see also Lance v. Pearce* (1884), 101 Ind. 595, 596, 1 N.E. 184 (a buyer unsuccessfully attempted to evade personal liability for goods he was authorized to charge to a third party). Second, Hackney, the promisee, manufactured and delivered the trailers at Monarch's request, therefore suffering a detriment, *i.e.,* consideration. Furthermore, Monarch, the promisor, possessed and used the specially manufactured trailers, therefore deriving a benefit, *i.e.,* consideration. Therefore, under both tests, sufficient consideration exists to support a valid contract.

More precisely, however, Indiana courts, including this court, refer to the law of sales for assistance in interpreting tax laws that relate to the sale of goods. *See Associated Milk Producers, Inc. v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 917, 919, *aff'd,* (1989), Ind., 534 N.E.2d 715; *Indiana Dep't of State Revenue v. Martin Marietta Corp.* (1979), Ind.

---

**9.** The property transferred does not have to be in the same form as when it was acquired. IC 6–2.5–4–1(c)(1).

App., 398 N.E.2d 1309, 1311. In the context of a "sale," the term "consideration" has been construed to mean simply a price estimated in money. *See Snyder v. Stanley* (1922), 77 Ind.App. 253, 260, 133 N.E. 512, 514 (citing Mechem, Sales, § 1; 35 Cyc. 25); *Wayne Pump Co. v. Department of Treasury* (1953), 232 Ind. 147, 155, 110 N.E.2d 284, 287. Furthermore, the Indiana Uniform Commercial Code (the UCC), IND. CODE 26–1–1–101 *et seq.*, defines a "sale" as "the passing of title from the seller to the buyer for a price (IC 26–1–2–401 [(2), which defines when a title passes])." IND.CODE 26–1–2–106(1). The UCC's definition follows "the common definition of a sale as the trade-off of title to property for consideration."[10] *Washington Nat'l Corp. v. Sears, Roebuck & Co.* (1985), Ind. App., 474 N.E.2d 116, 121, *trans. denied.* Therefore, under IC 26–1–2–106 consideration must be expressed as a price.

Monarch asserts it did not acquire the trailers in a retail transaction because Hackney did not transfer the trailers to Monarch *for consideration.* Monarch did not pay the purchase price to Hackney, and Monarch asserts that "consideration," as used in IC 6–2.5–4–1(b)(2), means the *price paid,* citing the Department's regulation 45 I.A.C. 2.2–4–1(b), *Indiana Dep't of State Revenue v. Marsh Supermarkets, Inc.* (1980), Ind.App., 412 N.E.2d 261, and three Ohio Supreme Court decisions. No where in regulation 45 I.A.C. 2.2–4–1(b), however, is "consideration" defined as the price paid.[11] Indeed, the regulation defines "consideration" as an agreed price. *See* 45 I.A.C. 2.2–4–1(b)(1).

In *Marsh Supermarkets,* the Indiana Court of Appeals stated that the term "consideration," as used in the Indiana Gross Income Tax Act to define "selling at retail,"[12] includes "the price at which property is *or* may be sold." *Marsh Supermarkets,* 412 N.E.2d at 267 (emphasis added). The court held that "the net price actually paid" was the only portion of a transaction involving discount coupons subject to sales tax because the net price was the price indeed paid, *i.e.,* "the price at which property is ... sold." *Id.*

Monarch further cites three Ohio Supreme Court cases, *Penton Publishing Co. v. Kosydar* (1976), 45 Ohio St.2d 16, 340 N.E.2d 396, *Roberts & Sons, Inc. v. Kosydar* (1975), 42 Ohio St.2d 495, 330 N.E.2d 437, and *Kloepfer's, Inc. v. Peck* (1953), 158 Ohio St. 577, 110 N.E.2d 560, for the proposition that a transfer of possession without payment means no consideration passed and no sale existed upon which to levy sales tax. All three cases lack not only the payment of a price, but also a promise to pay a price; either of which would be sufficient as consideration. In unmistakable contrast, the case at bar reveals a promise to pay that is sufficient as consideration: Monarch's promise that a third party would pay the price. Monarch's assertion of the Ohio cases as authority therefore is misguided.

When construing the plain language of IC 26–1–2–106, "[t]he court may not expand or contract the meaning of [the] statute by reading into it language to correct supposed omissions or defects." *Caylor-Nickel Clinic, P.C. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 569 N.E.2d 765, 769 (citing *Smiley v. State Dep't of Revenue* (1981), Ind.App., 416 N.E.2d 855, 856), *aff'd,* (1992), Ind., 587 N.E.2d 1311.

**10.** The elements in the UCC's definition of a "sale" are very similar to elements in the definition of "selling at retail" in IC 6–2.5–4–1(b)(2), which likewise requires a transfer of property for consideration.

**11.** 45 I.A.C. 2.2–4–1(b) states in relevant part:

(b) All elements of consideration are included in gross retail income subject to tax. Elements of consideration include, but are not limited to:

(1) The price arrived at between purchaser and seller.

(2) Any additional bona fide charges added to or included in such price for preparation, fabrication, alteration, modification, finishing, completion, delivery, or other services performed in respect to or labor charges for work done with respect to such property prior to transfer.

(3) No deduction from gross receipts is permitted for services performed or work done on behalf of the seller prior to transfer of such property at retail.

**12.** IND.CODE 6–2–1–1(k) (currently IND.CODE 6–2.1–2–1(b)).

IC 26–1–2–106 defines consideration as "a price." If the meaning of "consideration" were limited to the price paid, as Monarch suggests, the court would read IC 26–1–2–106 as if it stated, "a price *paid*," rather than as it is written.

Hackney delivered the trailers to Monarch along with individual invoices indicating that Monarch was the purchaser and that Monarch was liable to pay the price in fifteen days. The invoices also contained a *price estimated in money* for the trailers, *i.e.,* "the price at which the property ... may be sold." *See Marsh Supermarkets,* 412 N.E.2d at 267. Monarch did not pay Hackney the price for the trailers; nonetheless, payment is not necessary under 45 I.A.C. 2.2–4–1(b)(1), *Marsh Supermarkets,* IC 26–1–2–106, relevant Ohio decisions, or IC 6–2.5–4–1(b)(2). The court therefore finds Hackney transferred the trailers to Monarch *for consideration,* satisfying IC 6–2.5–4–1(b)(2).

Accordingly, Hackney is engaged in "selling at retail," as defined in IC 6–2.5–4–1, because (1) it acquired parts for the *purpose of resale* as manufactured trailers and (2) it transferred to Monarch possession of and title [13] to the trailers in exchange *for consideration.* Consequently, the court finds Monarch acquired the trailers from Hackney in a retail transaction, pursuant to IC 6–2.5–1–2(a) and is subject to tax under IC 6–2.5–2–1(a) and IC 6–2.5–3–2(a).

### 3.

■ Monarch claims to be entitled to a refund of the use tax paid to the BMV because Monarch paid the same tax on the trailers a second time under the lease agreement with Gelco. Monarch asserts the Department unfairly assessed and collected tax twice on what substantively is a singular transaction, exalting form over substance. On the contrary, the Department asserts that two distinct taxable events occurred, and the taxability of Monarch's lease-back of the trailers from Gelco does not abrogate the taxability of the original transfer from Hackney to Monarch.[14]

Sales and use taxes are transactional taxes imposed on the gross income received from a retail transaction. *See Welsh v. Sells* (1963), 244 Ind. 423, 430, 192 N.E.2d 753, 758, *appeal dismissed sub nom. Sells v. Welch* (1964), 376 U.S. 649, 84 S.Ct. 983, 11 L.Ed.2d 979. Therefore, sales or use tax can be collected more than once on the same item if the item is the subject of more than one non-exempt retail transaction.

Furthermore, the Legislature intended sales and use taxes as end use taxes imposed on ultimate user/consumers, indicated by providing exemptions that prevent tax pyramiding, *i.e.,* taxing items sold during the intermediate stages of production, prior to completion of the end product:

'All sales tax laws exempt or exclude some retail sales. The reasons for this treatment vary. Goods used in the manufacturing process are exempt entirely or partially by all state laws to avoid tax pyramiding, that is, the situation where a tax is levied on a tax and the result is a retail price increase greater than the amount of the tax.'

*General Motors Corp. v. Indiana Dep't of State Revenue* (1991), Ind.Tax, 578 N.E.2d 399, 405 (quoting *Welsh v. Sells,* 244 Ind. at 434–35, 192 N.E.2d at 759–60).

Monarch is the ultimate user/consumer of the trailers. Taxing the finished trailers more than once therefore does not offend

---

**13.** "Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of goods ... even though a document of title is to be delivered at a different time or place...." IC 26–1–2–401(2). Hackney delivered the trailers to Monarch, and even though the certificates of title were obtained from the BMV at a later date, title passed according to Indiana's sales law. *Id.*

**14.** If the transaction in which Monarch acquired the trailers from Hackney is taxable, Monarch claims the transaction in which it transferred title to the trailers to Gelco must also be taxable. Monarch's assertion, however, is misplaced because Gelco acquired the trailers not for the purpose of resale, but for the purpose of leasing them to Monarch, a transaction exempt under IND.CODE 6–2.5–5–8. *See also Indiana Dep't of State Revenue v. Hertz Corp.* (1983), Ind.App., 457 N.E.2d 246.

the legislature's policy against tax pyramiding.

Tax consequences are generally determined by the substance rather than the form of a transaction. *See Meridian Mortgage Co. v. State* (1979), 182 Ind.App. 328, 341, 395 N.E.2d 433, 440 (citing *Thompson v. Arnold* (1958), 238 Ind. 177, 147 N.E.2d 903; *Madding v. Indiana Dep't of State Revenue* (1971), 149 Ind.App. 74, 270 N.E.2d 771). Although Monarch apparently intended to transact its business involving the trailers in one three-way transaction, Monarch's possession and use of the trailers prior to Gelco's payment of the purchase price thwarted this intent. The form and the substance of Monarch's transactions both reveal, therefore, the execution of two distinct operations.

"The court may not invade the domain of the legislature...." *Caylor–Nickel,* 569 N.E.2d at 769 (citing *Department of State Revenue v. Crown Dev. Co.* (1952), 231 Ind. 449, 462, 109 N.E.2d 426, 431). The Legislature's tax levy on retail transactions may not be ignored just because a taxpayer did not intend a transaction to incur tax. Moreover, no legal rule exists that exalts a taxpayer's intent over the substance of a transaction. Monarch's transaction with Hackney, in form, was two distinct transactions and likewise, in substance, was executed as two separate transactions. Monarch's intent to create only one taxable transaction does not alter these facts. Accordingly, the court finds the Department properly denied Monarch's claim for refund and enters judgment in the Department's favor.