**Sol MAURER, Petitioner,**

v.

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 82T10–9203–TA–00009.

Tax Court of Indiana.

Feb. 5, 1993.

James A. Kornblum, Lockyear & Kornblum, Evansville, for petitioner.

Pamela Carter, Atty. Gen., David A. Arthur, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

In a case of first impression in Indiana, Petitioner Sol Maurer appeals the final determination by the Respondent, the Indiana Department of State Revenue (the Department), denying Maurer's claim for refund of gross retail/use tax. The issue presented is whether Maurer, as the winner of a prize in a charity raffle, is liable for sales or use tax on the prize he received or on the ticket that gave him the chance to win that prize. He is not.

## FACTS

Infa–Life Seekers is a tax-exempt Evansville area charity that provides money and equipment to special care nurseries for premature and ill infants. In the spring of 1991, Infa–Life held a raffle to raise funds for its work. The charity sold several hundred tickets at $100 apiece, each ticket representing a chance to win a 1991 Chevrolet Corvette automobile. Maurer purchased ticket number 232, which was eventually drawn as the winner.

On May 18, 1991, Infa–Life paid Kenny Kent Chevrolet Company (Kenny Kent), a downtown Evansville auto dealer, $30,453 for the prize Corvette. After being notified he had won, Maurer went to the dealership on May 20, 1991, to claim his prize. Kenny Kent, however, would not release the car until Maurer paid $1,522.65 in sales tax on the $30,453 purchase price. Maurer paid the tax and filed his claim for refund. The Department's denial of that claim led to this appeal.

## DISCUSSION AND DECISION

### Standard of Review

In reviewing this appeal from the Department, the court applies a *de novo* standard and is not bound by the evidence or the issues presented at the administrative level. IND.CODE 6–8.1–9–1(d); *Hoosier Energy Rural Elec. Coop., Inc. v. Indiana Dep't of State Revenue* (1988), Ind.Tax, 528 N.E.2d 867, 869, *aff'd*, (1991), Ind., 572 N.E.2d 481, *cert. denied*, (1991), —— U.S. ——, 112 S.Ct. 337, 116 L.Ed.2d 277. Moreover, bearing in mind the novel nature of the claims presented in this case, the court notes each party, at some stage, has been responsible for meeting a burden of proof. To the extent Maurer seeks an exemption from sales/use tax, he bears the burden because statutes creating tax exemptions are strictly construed against the taxpayer. *Harlan Sprague Dawley, Inc. v. Indiana Dep't of State Revenue* (1992), 605 N.E.2d 1222, 1225 (citing *General Motors Corp. v. Indiana Dep't of State Revenue* (1991), Ind. Tax, 578 N.E.2d 399, 404, *aff'd*, (1992), Ind., 599 N.E.2d 588). At the same time, to the extent the Department claims the transactions at issue are within the ambit of the sales/use tax imposition statutes, the Department bears the burden to prove its case. *See Wechter v. Indiana Dep't of State Revenue* (1989), Ind. Tax, 544 N.E.2d 221, 224, *aff'd* (1990), Ind., 553 N.E.2d 844.

At its heart, this is a case about two contracts, their component transactions, and their taxability. Before proceeding to the specific contracts, therefore, a review of the applicable law is necessary.

### THE LAW

*Sales and Use Tax and Charitable Organizations*

Under the State Gross Retail and Use Tax Act (the Act), IND.CODE 6–2.5–1–1 *et seq.*, Indiana imposes excise tax on sales transactions between buyers and sellers. The Act imposes sales tax on "retail transactions." IND.CODE 6–2.5–2–1; *Monarch Beverage Co. v. Indiana Dep't of State Revenue* (1992), Ind.Tax, 589 N.E.2d 1209,

1210. Generally, to qualify as a retail transaction, tangible personal property must be acquired for the purpose of resale and transferred to another person for consideration in the ordinary course of the seller's regularly conducted trade or business. IND.CODE 6-2.5-4-1(b).

If tangible personal property is acquired in a retail transaction, the use tax "is imposed on the storage, use, or consumption of [that] property in Indiana." IND.CODE 6-2.5-3-2(a). Vehicles, aircraft, and watercraft, however, are subject to use tax even if acquired in isolated or occasional sales. IND.CODE 6-2.5-3-2(b). Property is exempt from the use tax if sales tax was paid on the acquisition of the property. IND. CODE 6-2.5-3-4(a)(1).

Qualified charitable organizations such as Infa-Life are exempt from federal and state income taxes under I.R.C. § 501(c)(3) and IND.CODE 6-2.1-3-19 through 22. In turn, qualified charitable organizations are exempt from sales tax, both as a buyer and a seller. IND.CODE 6-2.5-5-25; 6-2.5-5-26. The sales tax exemption on sales by qualified charitable organizations applies only to tangible personal property. IC 6-2.5-5-26(a). There is also a use tax exemption for property acquired exempt from sales tax under IC 6-2.5-5 if the property is stored, used, or consumed for the purpose for which it received the exemption. IC 6-2.5-3-4(a)(2). Qualified charitable organizations also receive an additional benefit. They are statutorily allowed to raise funds for their charitable work through raffles, bingo games, and other games of chance. IND.CODE 4-32.

*Gaming Laws*

The purpose of IC 4-32 is to "permit a [tax exempt] organization ... to conduct raffles ... and award prizes as a fund raising activity for lawful purposes of the organization." IND.CODE 4-32-1-2. A raffle is "the selling of tickets or chances to win a prize awarded through a random drawing." IND.CODE 4-32-2-7 (repealed by P.L. 24-1992, § 63, now IND.CODE 4-32-6-21).

▮ The words of these statutes, like all others, are given their plain, ordinary, and usual meaning unless the legislative intent reveals a contrary purpose. *See Harlan Sprague Dawley, Inc.,* 605 N.E.2d at 1224 (citing *Hartman v. State* (1992), 602 N.E.2d 1011, 1013; *Park 100 Dev. Co. v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220, 222; *Johnson County Farm Bureau Coop. Ass'n v. Indiana Dep't of State Revenue* (1991), Ind. Tax, 568 N.E.2d 578, 580–81, *aff'd* (1992), Ind., 585 N.E.2d 1336). Moreover, statutes must be construed within the context of the entire act of which they are a part and to give full effect, if possible, to all words and clauses. *Id.* 605 N.E.2d at 1225 (citing *Guinn v. Light* (1990), Ind., 558 N.E.2d 821, 823).

▮ By its plain terms, IC 4-32-2-7 provides that a raffle ticket or chance represents a potential claim to a prize awarded after a random drawing. The player is indifferent to the ticket; what matters is the prize the ticket may generate. In Indiana, the substance, not the form, of a transaction determines its tax consequences. *Mason Metals Co. v. Indiana Dep't of State Revenue* (1992), Ind. Tax, 590 N.E.2d 672, 675 (citing *Meridian Mortgage Co. v. State* (1979), 182 Ind.App. 328, 395 N.E.2d 433, 440), and the substance of a raffle ticket sale transaction is the purchase of the opportunity to win, not the purchase of the ticket. The sale of a raffle ticket to a raffle player is therefore not a sale of tangible personal property. Other courts have reached the same result, holding a ticket "is the physical evidence of a *right* of the purchaser or holder to a chance to win." *City of Gilroy v. State Bd. of Equalization* (1989), 212 Cal.App.3d 589, 598, 260 Cal.Rptr. 723, 728, *rev. denied* (emphasis in original).[1] The court now turns to the contracts at hand.

---

**1.** In *City of Gilroy,* the issue was whether the sale of printed lottery tickets by the manufacturer to the California Lottery Commission was subject to state gross receipts tax. Drawing a sharp distinction between the Lottery Commission's purchase of the tickets and the Lottery players' purchase of the opportunity to win a prize represented by the tickets, the Court of

## THE CONTRACTS

The Department claims Maurer took title to the car in a retail transaction with Kenny Kent, and that Maurer is therefore liable for the sales tax on the entire $30,453 purchase price. This position misstates the nature of the transactions at issue.

### Kenny Kent and Infa–Life

■ The first contract is between Kenny Kent and Infa–Life. Under that contract, Infa–Life paid Kenny Kent $30,453 for the Corvette, and Kenny Kent promised to deliver the car to the winner of Infa–Life's drawing. Kenny Kent is an auto dealer, and the transaction between Kenny Kent and Infa–Life was a retail transaction made in the ordinary course of Kenny Kent's regularly conducted business and subject to sales tax under IC 6–2.5–2–1. The transaction was not taxable, however, due to Infa–Life's uncontested tax exempt status under IC 6–2.5–5–25.

■ Acknowledging Infa–Life's tax exempt status, the Department claims Maurer is liable for sales tax on his receipt of possession because title went directly from Kenny Kent to Maurer and Infa–Life never acquired title to the vehicle. The Department bases its argument on the title documents, which fail to show Infa–Life in the chain of title. In Indiana, however, transfer of title is not dependent upon delivery of title documents. *See Monarch Beverage Co.*, 589 N.E.2d at 1214, n. 13 (quoting IND.CODE 26–1–2–401(2)). Rather, unless otherwise agreed, title passes on receipt of consideration. *Id.* at 1213. It is well settled that title "certificates do not *convey* title and they are not conclusive proof of title in him who is therein designated as the owner." *Champa v. Consol. Fin. Corp.* (1953), 231 Ind. 580, 592, 110 N.E.2d 289, 294 (quoting *Nichols v. Bogda Motors* (1948), 118 Ind.App. 156, 77 N.E.2d 905, 907) (emphasis in original).[2]

■ In the case at bar, there is no evidence Kenny Kent and Infa–Life agreed to any special transfer of title, and therefore, when Infa–Life gave Kenny Kent consideration for the vehicle, it acquired title to the vehicle, and would have been liable for the sales tax but for its exempt status. *See* IC 6–2.5–2–1(b) ("The person who *acquires* property in a retail transaction is liable for the tax on the transaction....") (emphasis added). As stated in IC 6–2.5–4–1(b)(2), selling at retail requires a "transfer[ ] [of] property to another person for consideration." *See Monarch Beverage Co.*, 589 N.E.2d at 1213, n. 10.[3]

After Infa–Life paid for the car, all that remained for Kenny Kent was to transfer physical possession to the drawing winner, Maurer. Despite the Department's arguments, the delivery of the car to Maurer was not a retail transaction because to "transfer" property within the meaning of IC 6–2.5–4–1(b)(2), the transferor must sell the property, that is, transfer it for consideration. *See Monarch Beverage Co.*, 589 N.E.2d 1209. Kenny Kent could not transfer title to Maurer because it had already transferred title to Infa–Life, and there

Appeal held the manufacturer's sale taxable. The case at bar, however, presents no issue of the taxability of the tickets themselves, and the court therefore saves that issue for another day.

2. Indeed, in *Monarch Beverage Co.*, 589 N.E.2d 1209, the Department took the opposite tack to its arguments today, reasoning the lessee/Petitioner in that case acquired vehicles in a retail transaction, even though the title certificates were never transferred. The court affirmed the Department's denial of the Petitioner's claim for refund.

3. The linchpin of taxability under IC 6–2.5–4–1(b)(2) is "consideration," not, as the Department's argument implies, "another person." Were it otherwise, many retail sales would be subject to double taxation. For example, every time a parent purchased a car or other tangible personal property for a child and the seller physically transferred the property to the child, the Department would exact sales tax on the parent's payment of consideration to the seller and again on the seller's transfer of possession to the child.

The Department also relies on *Gross Income Tax Division v. L.S. Ayres & Co.* (1954), 233 Ind. 194, 201, 118 N.E.2d 480, 483, for the proposition that third party contracts may be retail transactions. The third party contracts at issue in *L.S. Ayres & Co.*, however, entailed passage of title from Ayres the seller directly to the third party, and in the case at bar, title went from Kenny Kent to Infa–Life to Maurer, and the concepts discussed in *L.S. Ayres & Co.* are inapplicable.

simply cannot be a transfer of title from one who does not hold title. *See Downing v. Eubanks* (1990), Ind.App., 557 N.E.2d 1027, 1029–30 (quoting *Lisenbee v. Parr* (1970), 62 Tenn.App. 518, 465 S.W.2d 361, 365). Because Maurer did not acquire the car in a retail transaction with Kenny Kent, the delivery of the vehicle is not a taxable transaction.

*Infa–Life and Maurer*

Infa–Life and Maurer entered into an aleatory contract in which Maurer paid Infa–Life $100 in return for a contingent right to be awarded a prize if Maurer's number was chosen in a random drawing. By its own terms, Infa–Life was obligated to fulfill its promise only on the happening of a contingent or uncertain event. *See* 3A *CORBIN ON CONTRACTS*, § 728 (1960); 6A *CORBIN ON CONTRACTS*, § 1481 (1962). Unless and until that uncertain event, the drawing of Maurer's number, occurred, Infa–Life was under no obligation.[4]

■ The contingency occurred; Maurer's number was drawn. Therefore, the contract between Infa–Life and Maurer involved two transactions. The first is the sale of the ticket. Raffle tickets are evidence of a right to claim a prize if a contingency occurs; they are not tangible personal property. *City of Gilroy*, 212 Cal. App.3d 589, 598, 260 Cal.Rptr. 723, 728. Therefore, the sale of the ticket to Maurer was not a taxable transaction because the ticket was not tangible personal property subject to sales tax under IC 6–2.5–4–1(b)(1) and IND.CODE 6–2.5–4–2.[5] Because the sale of the ticket is not subject to sales tax, Maurer is under no sales tax liability for the purchase of the ticket.[6]

Similarly, because the ticket is not tangible personal property, Maurer is under no liability for use tax on the ticket. Use tax is imposed only on tangible personal property. IND.CODE 6–2.5–3–1.

■ The second transaction between Infa–Life and Maurer was the transfer of the prize from Infa–Life to Maurer when Maurer's number was drawn. Sales tax is imposed on retail transactions. IC 6–2.5–2–1. Maurer, however, won a prize. *See* IC 4–32–2–7. He did not acquire title to the car in a retail transaction. The essence of a sale is the transfer of title to property for consideration. *Monarch Beverage Co.*, 589 N.E.2d at 1213. *See also Wayne Pump Co. v. Dep't of Treasury* (1953), 232 Ind. 147, 110 N.E.2d 284. Maurer paid $100 consideration in return for the right to claim the Corvette if his number was picked. This was a sale, involving the trade of $100 in consideration for the intangible right to claim a prize upon the happening of a contingency. *See City of Gilroy*, 212 Cal.App.3d 589, 260 Cal.Rptr. 723. After that exchange was complete, the other transaction, acquisition of title to the car, was not a sale of any type, retail or otherwise.[7] Rather, it was the winning of a prize as contemplated by the gaming laws. *See* IC 4–32–2–7.[8]

---

**4.** At the moment Maurer's number was drawn, however, Infa–Life was required to award him the prize, just as Infa–Life would have been able to retain Maurer's $100 if his number had not been drawn. *See, e.g., Wilson v. Dexter* (1963), 135 Ind.App. 247, 192 N.E.2d 469 (discussing the contingent obligations of a nursing home that had promised room and board for life to an elderly lady in return for her transfer of most of her property to the nursing home; the lady died before she got any benefit from the bargain, and the court held the nursing home was entitled to retain the property because the lady had bargained on an uncertain event).

**5.** Even if the ticket were tangible personal property, however, the transaction would nonetheless not be taxable because it was not made "in the ordinary course of [Infa–Life's] regularly conducted trade or business." IC 6–2.5–4–1(b).

*See also Monarch Beverage Co.*, 589 N.E.2d at 1211–12. It is undisputed that Infa–Life's regularly conducted trade is to perform charitable works for nurseries, not to engage in raffles.

**6.** The Department reached the same conclusion in its recently promulgated regulations. *See* 45 I.A.C. 18–5–1(d).

**7.** Because Maurer did not acquire title in a retail transaction, the sales tax exemption for charitable sales is irrelevant. IC 6–2.5–5–26(a) grants exemption for qualified charitable organizations' "*[s]ales* of tangible personal property." (Emphasis added.)

**8.** The court notes the gaming laws provide for income taxation of monetary and non-monetary prizes, but make no mention of sales tax liabili-

Neither is Maurer subject to use tax under IC 6–2.5–3. Most tangible personal property is subject to use tax only if acquired in a retail transaction. IC 6–2.5–3–2. As noted above, vehicles are also subject to use tax if acquired in an isolated or occasional sale. IC 6–2.5–3–2(b). Because Maurer won the car as a prize, however, and did not acquire it in a sale at all, he is not liable for any use tax on the car.

## CONCLUSION

Maurer bought a raffle ticket, a representation of an intangible right to win a prize on the happening of a contingency. The contingency occurred and Maurer won the prize. The Act does not impose tax on these transactions. The court therefore REVERSES the Department's denial of Maurer's claim for refund and ORDERS the Department to refund the tax Maurer paid with appropriate interest.[9]

ty on either the part of the charity or the prize winner. IND.CODE 4–32–4–1; 4–32–4–2.

9. Because of the disposition of Maurer's claim, the court does not address the parties' arguments concerning the Department's Information Bulletin 40.